## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD ROBBINS, RENEE CLONTS, MAX BACHARA, MELISSA GARNER, AMITABH SHARMA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>GENERALI GLOBAL ASSISTANCE, INC., dba "CSA Travel Protection and Insurance Services" and GENERALI U.S. BRANCH,<br><br>Defendants. | **Case No.**<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Richard Robbins, Renee Clonts, Max Bachara, Melissa Garner, and Amitabh Sharma ("Plaintiffs"), by and through their counsel of record, Rosman & Germain LLP and Zimmerman Reed LLP, bring this Class Action Complaint on behalf of themselves and all others similarly situated, and demand a trial by jury, for the acts and omissions arising out of Defendants' failure and refusal to indemnify Plaintiffs and all others similarly situated under the terms of Defendants' travel insurance contracts for losses and damages sustained following the closures and travel restrictions imposed by various federal, state and local governments due to the Coronavirus Pandemic.

### INTRODUCTION

1.     Each Plaintiff purchased from Defendants Generali Global Assistance, Inc., dba "CSA Travel Protection and Insurance Services" and Generali U.S. Branch (collectively, "Defendants"), a travel protection and insurance policy (the "Insurance Policy") to insure against, among other things, trip cancellation, trip interruption and travel delays for trips Plaintiffs intended to take at some point in 2020.

2.     The uniform Insurance Policy at issue specifically provides coverage benefits for trip cancellation due to various stated occurrences, including "Being hijacked or Quarantined." Moreover, the Insurance Policy states: "QUARANTINE means the enforced isolation of you or your Traveling Companion, for the purpose of preventing the spread of illness, disease or pests." Moreover, the uniform Insurance Policy at issue also provides coverage for trip cancellation due to "The interruption of road service for 24 hours or more due to adverse weather or natural disaster so as to prohibit you from reaching your destination," and when policyholders' destinations were "made inaccessible due to fire, flood, volcano, earthquake, hurricane or other natural disaster."

3.     Due to the global health crisis caused by the Coronavirus, on March 19, 2020, the state of California, as well as the county of Los Angeles, ordered all citizens to stay at home and avoid non-essential travel.[1] The next day on March 20, 2020, the state of Illinois also ordered all citizens to state at home and prohibited non-essential travel including travel by automobile, train, plane, or public transit.[2] A few days later on March 23, 2020, the state of Oregon followed suit and issued a stay at home order directing residents to avoid all non-essential travel.[3] On March 27, 2020, the state of Utah as well as Salt Lake County issued directives ordering all Utah residents to stay home as much as possible and were prohibited from non-essential travel.[4] On April 2, 2020,

---

[1] The Executive Orders issued by the California, Illinois, Oregon, Utah, and Georgia governors are herein ccollectively referred to as the "Travel Prohibition Orders."
[2] https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-10.aspx (last visited July 24, 2020).
[3] https://govsite-assets.s3.amazonaws.com/jkAULYKcSh6DoDF8wBM0_EO%2020-12.pdf (last visited July 28, 2020).
[4] https://coronavirus.utah.gov/full-text-governors-stay-home-stay-safe-directive/ (last visited August 6, 2020).

the state of Georgia issued directives ordering all Georgia residents to shelter in place order and prohibited any non-essential travel.[5]

4.      Based upon these states' Travel Prohibition Orders, Plaintiffs were forced to cancel their trips. Shortly thereafter, each Plaintiffs filed a claim with Defendants seeking coverage under their Insurance Policy for their losses and damages.

5.      Plaintiffs received written notice from Defendants denying each of their claims for coverage in its entirety due to alleged exclusions.

6.      Plaintiffs now seek recovery under the terms of the Insurance Policy and allege that Defendants are in breach of contract and have acted in bad faith by denying Plaintiffs' claims for coverage. Plaintiffs also seek declaratory relief from the Court that their losses and damages resulting from the Travel Prohibition Orders are covered under the terms of the Insurance Policy. Moreover, by denying Plaintiffs' claims for coverage, Defendants also violated duties established at common law barring breach of contract and tortious breach of the covenant of good faith and fair dealing. By their misconduct, Defendants have violated statutory and common law and retained ill-gotten gains at the expense of Plaintiffs and the Class. Accordingly, Plaintiffs and the Class are entitled to restitution, damages, equitable relief, and all other available remedies.

7.      Because Defendants engaged in their misconduct with respect to the Insurance Policy in the same manner as to numerous other consumers, a class action is the superior means of resolving these issues for all affected consumers.

---

[5] https://drive.google.com/file/d/1uciKfqDQb9hTPD4Jp1wL_lB8wL74ybgy/view (last visited August 6, 2020).

## PARTIES

8.      At all times relevant hereto, Plaintiff Richard Robbins was a citizen of the state of California and domiciled in the city Beverly Hills, county of Los Angeles.

9.      At all times relevant hereto, Plaintiff Renee Clonts was a citizen of the state of Georgia and domiciled in the city of Dallas, county of Paulding.

10.     At all times relevant hereto, Plaintiff Max Bachara was a citizen of the state of Illinois and domiciled in the city of Warrenville, county of DuPage.

11.     At all times relevant hereto, Plaintiff Melissa Garner was a citizen of the state of Oregon and domiciled in the city of Haines, county of Baker.

12.     At all times relevant hereto, Plaintiff Amitabh Sharma was a citizen of the state of Utah and domiciled in the city of Salt Lake City, county of Salt Lake.

13.     Defendant Generali Global Assistance, Inc. is a New York corporation, formerly doing business as "CSA Travel Protection and Insurance Services" which maintains its headquarters and principal place of business at 4340 East West Highway, Suite 1000, Bethesda, MD 20814.

14.     Defendant Generali U.S. Branch is a Maryland corporation, which maintains its headquarters and principal place of business at 250 Greenwich Street, 33rd Floor, New York, NY 10007.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. 1332(d).   Plaintiffs seek to prosecute this class action on a nationwide basis, satisfying CAFA's diversity requirement, because (a) at least one member of the putative class is a citizen of a state different from Defendants, (b) the amount in controversy

exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.  28 U.S.C. §1332(d)(2)(A).

16.     The Court has personal jurisdiction over each of the Defendants because each Defendant transacts significant amounts of business throughout the United States with consumers, including Plaintiffs. This Court also has general jurisdiction over Defendants Generali U.S. Branch because its principal place of business is in this district, and is the location from which it underwrites insurance policies to consumers, including Plaintiffs. Additionally, this Court has personal jurisdiction over Defendant Generali Global Assistance, Inc. because it is incorporated in this district and administers insurance plans from this district.

17.     Venue is additionally proper because a substantial part of the events, conduct or omissions giving rise to the claims herein occurred in or emanated from this state and Defendants engaged in the complained-of transactions with Plaintiffs in this District.

## FACTS COMMON TO ALL COUNTS

A.     **The Coronavirus Pandemic**

18.     On March 11, 2020, the World Health Organization ("WHO") declared the Coronavirus which causes a life threatening illness known as COVID-19 (the "Coronavirus") a global pandemic, stating it was "deeply concerned by the alarming levels of spread and severity, and by the alarming levels of inaction" to prevent the Coronavirus from spreading any further.[6] That same day, the total number of confirmed Coronavirus cases in the United States surpassed 1,100.[7]

---

[6] https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020 (last visited August 6, 2020).
[7] https://www.nytimes.com/2020/03/10/world/coronavirus-news.html (last visited August 06, 2020).

19.    As of April 23, 2020, more than 2.5 million globally confirmed Coronavirus cases were reported to the WHO, with over 800,000 in the United States.[8]

**B.    Methods of Coronavirus Transmission**

20.    While transmission of the Coronavirus is not yet fully understood, researchers have documented both human-to-human and surface-to-human transmission of the virus.[9]

21.    Most commonly, Coronavirus is spread through aerosolized droplets from an infected person.  Studies have found that Coronavirus can travel in aerosolized droplets up to 27 feet.[10]

22.    However, indirect contact with surfaces or objects touched by an infected person can also lead to infection.[11] On March 27, 2020, the United States Centers for Disease Control and Prevention ("CDC") issued a report on Coronavirus outbreaks on cruise ships and found that the Coronavirus was identified on a variety of surfaces up to 17 days after cabins had been vacated.[12] Other studies from the New England Journal of Medicine have found that the Coronavirus lasts on surfaces at room temperature for up to 3 days.[13]

---

[8] https://covid19.who.int/ (last visited August 5, 2020).

[9] *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (Coronavirus able to exist for hours on surfaces); *see also* https://www.who.int/news-room/commentaries/detail/modes-of-transmission-of-virus-causing-covid-19-implications-for-ipc-precaution-recommendations (Coronavirus spreads through aerosolized droplets expelled from humans) (last visited August 6, 2020).

[10] https://www.usatoday.com/story/news/health/2020/03/30/coronavirus-social-distancing-mit-researcher-lydia-bourouiba-27-feet/5091526002/ (last visited August 3, 2020).

[11] https://www.journalofhospitalinfection.com/action/showPdf?pii=S0195-6701%2820 (last visited July 30, 2020).

[12] https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e3.htm?s_cid=mm6912e3_w (last visited July 31, 2020).

[13] https://www.nejm.org/doi/full/10.1056/NEJMc2004973 (last visited July 28, 2020).

**C.    Governmental Response to the Coronavirus**

23.    The scientific community at large, including the WHO, has recognized that the "Coronavirus is a cause of real physical loss and damage."

24.    On March 16, 2020, the White House and Centers for Disease Control and Prevention ("CDC") for the first time initiated a "30 Days to Slow the Spread" campaign to educate the public on the Coronavirus.[14] The campaign urged citizens to maintain adequate social distancing of at least 6 feet, ***avoid discretionary travel***, and follow the directions of state and local authorities. It also urged citizens to self-isolate if they or anyone they reside with feels sick or tests positive for the Coronavirus.

25.    On March 19, 2020, California Governor Gavin Newsome issued Executive Order N-33-20[15] which stated, in part: "To protect public health, I . . . order all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors." Later that same day, Los Angeles Mayor Eric Garcetti issued a Public Order Under City of Los Angeles Emergency Authority[16] which ordered that "all persons living within the City of Los Angeles are hereby ordered to remain in their homes." The Order further stated: "All travel, including, without limitation, travel on foot, bicycle, scooter. Motorcycle, automobile, or public transit is prohibited…"

---

[14] https://www.whitehouse.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-guidance_8.5x11_315PM.pdf (last visited August 3, 2020).
[15] https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf
[16] https://www.lamayor.org/sites/g/files/wph446/f/article/files/SAFER_AT_HOME_ORDER2020.03.19.pdf

26.    On March 20, 2020, Illinois Governor J.B. Pritzker issued Executive Order 2020-10[17] declaring all counties in the state of Illinois as a disaster area and stated, in part: "[a]ll individuals currently living within the State of Illinois are ordered to stay at home or at their place of residence[.] All travel, including, but not limited to, travel by automobile, motorcycle, scooter, bicycle, train, plane, or public transit except essential travel and essential activities…is prohibited."

27.    On March 23, 2020, Oregon Governor Kate Brown issued Executive Order No. 20-12[18] which stated, in part: "It is essential to the health, safety, and welfare of the State of Oregon during the ongoing state of emergency that, to the maximum extent possible, individuals stay at home or at their place of residence…individuals are directed to minimize travel, other than essential travel to or from a home, residence, or workplace; for obtaining or providing food, shelter, essential consumer needs, education, health care, or emergency services; for essential business and government services; for the care of family members…and other essential travel consistent with the directive of [the] Executive Orders."

28.    On March 27, 2020, Utah Governor Gary R. Herbert issues the Coronavirus Directive titled "Stay Safe, Stay Home"[19] which directs all individuals to "stay at home as much as possible" and requires them to "limit travel only to essential travel."

29.    On April 2, 2020, Georgia Governor Brian Kemp issued an Executive Order declaring, in part: "That all residents and visitors of the State of Georgia are required to shelter in

---

[17] https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-10.aspx
[18] https://govsite-assets.s3.amazonaws.com/jkAULYKcSh6DoDF8wBM0_EO%2020-12.pdf
[19] https://drive.google.com/file/d/1Qey2xIxAEqIxiiAHJyHSxBosmjetkbN7/view

place within their homes or places of residence[.]" The Order further stated that residents and visitors were limited to only necessary travel and prohibited any non-essential travel.[20]

30.     These Travel Prohibition Orders were based in part on the fact that the movement of people and commerce posed significant health and safety concerns to the community in light of the Coronavirus' ability to transmit from person-to-person and surface-to-person.

**D.     Plaintiffs Purchased Defendants' Travel Protection and Insurance Policy**

31.     On or about February 7, 2020, Plaintiff Robbins purchased from Defendants travel protection and insurance, policy number 20038W2847 (the "Insurance Policy") to insure against, among other things, Trip Cancellation, Trip Interruption and Travel Delays for a trip that he intended to take to Deer Valley, Utah, between April 4, 2020 and April 12, 2020. The stated maximum insurance coverage limit provided by the Insurance Policy for Trip Cancellation is $7,681.77.

32.     On or about February 13, 2020, Plaintiff Renee Clonts purchased from Defendants an Insurance Policy, policy number 20044W5097, to insure against and among other things, Trip Cancellation, Trip Interruption, and Trip Delays for a planned trip to Panama City Beach, Florida between May 8, 2020 and May 13, 2020. The stated maximum insurance coverage limit provided by the Insurance Policy for Trip Cancellation is $454.00.

33.     On or about October 5, 2019, Plaintiff Max Bachara purchased from Defendants an Insurance Policy, policy number TMP100010, to insure against and among other things, Trip Cancellation, Trip Interruption, and Trip Delays for a planned trip to Anna Maria Island, Florida

---

[20] https://drive.google.com/file/d/1uciKfqDQb9hTPD4Jp1wL_lB8wL74ybgy/view (last visited August 6, 2020).

between March 28, 2020 and April 4, 2020. The stated maximum insurance coverage limit provided by the Insurance Policy for Trip Cancellation is $9,848.68.

34.    On or about February 23, 2020, Plaintiff Melissa Garner purchased from Defendants an Insurance Policy, policy number 20054W3816, to insure against and among other things, Trip Cancellation, Trip Interruption, and Trip Delays for a planned trip to Englewood, Florida between April 24, 2020 and April 27, 2020. The stated maximum insurance coverage limit provided by the Insurance Policy for Trip Cancellation is $824.80.

35.    On or about March 3, 2020, Plaintiff Amitabh Sharma purchased from Defendants an Insurance Policy, policy number 20063W3267, to insure against and among other things, Trip Cancellation, Trip Interruption, and Trip Delays for a planned trip to Hawaii between May 13, 2020 and May 20, 2020. The stated maximum insurance coverage limit provided by the Insurance Policy for Trip Cancellation is $1,405.56.

36.    Defendants' Travel Protection and Insurance Policy states, in part: "Benefits will be paid, up to the amount in the Schedule, for the forfeiture, prepaid, non-refundable, non-refunded, and unused published Payments that you paid for your Trip. If you are prevented from taking your Trip due to one of the following unforeseeable Covered Events that occur before departure on your Trip to you or your Traveling Companion, while your coverage is in effect under this Policy." The Insurance Policy contains a long list of "Covered Events," including: "4. Being hijacked or Quarantined." Moreover, the Insurance Policy defines the term "Quarantine" as follows: "QUARANTINE means the enforced isolation of you or your Traveling Companion, for the purpose of preventing the spread of illness, disease or pests." The Insurance Policy also provides coverage due to "The interruption of road service for 24 hours or more due to adverse weather or natural disaster so as to prohibit you from reaching your destination," and when

policyholders' destinations were "made inaccessible due to fire, flood, volcano, earthquake, hurricane or other natural disaster." COVID-19 is a natural disaster and the Travel Prohibition Orders both interrupted road service and made destinations inaccessible.

**E.    Plaintiffs Suffered an Unforeseeable Covered Event and Resulting Losses due to the Coronavirus Pandemic**

37.    <u>Plaintiff Robbins</u>. As set forth above, on March 19, 2020 (more than 5 weeks after Plaintiff Robbins purchased the Insurance Policy), the state of California as well as the City of Los Angeles ordered all citizens to stay at home and avoid non-essential travel. Based upon these Travel Prohibition Orders, which were unforeseeable to Plaintiff at the time he purchased the Insurance Policy, Plaintiff cancelled his trip to Deer Valley to be taken between April 4, 2020 and April 12, 2020.

38.    Following cancellation of the trip, Plaintiff Robbins promptly submitted a claim to Defendants for Trip Cancellation Coverage under the Insurance Policy (Claim Number 20034177-01). Specifically, Plaintiff notified Defendants that he was seeking the maximum insurance coverage limit provided by the Insurance Policy for Trip Cancellation in the total amount of $7,681.77.

39.    On May 20, 2020, Plaintiff Robbins received a letter from Defendants denying coverage for the claim in its entirety. A copy of the denial letter is attached hereto as Exhibit A.

40.    <u>Plaintiff Clonts</u>. On March 13, 2020 (about a month after Plaintiff Clonts purchased Defendants' Insurance Policy), the state of Georgia ordered all citizens to stay at home and avoid non-essential travel. In accordance with the state's Travel Prohibition Orders, which was unforeseeable to Plaintiff Clonts at the time she purchased the Insurance Policy, Plaintiff Clonts cancelled her trip to Florida which was to be taken between May 8, 2020 and May 13, 2020.

41.     Following the cancellation of her trip, Plaintiff Clonts submitted a claim to Defendants for Trip Cancellation Coverage under the terms of the Insurance Policy, claim number 20060284-01. Plaintiff Clonts notified Defendants that she was seeking the maximum insurance coverage limit provided by the Insurance Policy for Trip Cancellation totaling $545.00.

42.     On June 13, 2020, Plaintiff Clonts received a letter from Defendants denying coverage for the claim in its entirety. A copy of the denial letter is attached hereto as Exhibit B.

43.     <u>Plaintiff Bachara</u>. As set forth above, on March 20, 2020 (more than five months after Plaintiff Bachara purchased Defendants' Insurance Policy), the state of Illinois ordered all citizens to stay at home and avoid non-essential travel. In accordance with the state's Civil Authority Order, which was unforeseeable to Plaintiff Bachara at the time he purchased the Insurance Policy, Plaintiff cancelled his trip to Florida which was to be taken between March 28, 2020 through April 4, 2020.

44.     Following cancellation of the trip, Plaintiff Bachara promptly submitted a claim to Defendants for Trip Cancellation Coverage under the terms of the Insurance Policy, claim number 20025168-01. Plaintiff Bachara notified Defendants that he was seeking the maximum insurance coverage limit provided by the Insurance Policy for Trip Cancellation totaling $9,848.68.

45.     On April 29, 2020, Plaintiff Bachara received a letter from Defendants denying coverage for the claim in its entirety. A copy of the denial letter is attached hereto as Exhibit C.

46.     <u>Plaintiff Garner</u>. As set forth above, on March 24, 2020 (more than four weeks after Plaintiff Garner purchased Defendants' Insurance Policy), the state of Oregon ordered all citizens to stay at home and avoid non-essential travel. In accordance with the state's Travel Prohibition Orders, which was unforeseeable to Plaintiff Garner at the time she purchased the Insurance Policy,

Plaintiff Garner cancelled her trip to Florida which was to be taken between April 24, 2020 and April 27, 2020.

47.     Shortly after cancelling her trip, Plaintiff Garner submitted a claim to Defendants for Trip Cancellation Coverage under the terms of the Insurance Policy, claim number 20055034-01. Plaintiff Garner notified Defendants that she was seeking the maximum insurance coverage limit provided by the Insurance Policy for Trip Cancellation totaling $824.80.

48.     On June 15, 2020, Plaintiff Garner received a letter from Defendants denying coverage for the claim in its entirety. A copy of the denial letter is attached hereto as Exhibit D.

49.     <u>Plaintiff Sharma</u>. On March 27, 2020, (almost three weeks after Plaintiff Sharma purchased Defendants' Insurance Policy), the state of Illinois and Salt Lake County ordered all citizens to stay at home and avoid non-essential travel. Based on these Travel Prohibition Orders, which was unforeseeable to Plaintiff Sharma at the time he purchased Defendants' Insurance Policy, Plaintiff Sharma cancelled his trip to Hawaii which was to be taken between May 13, 2020 and May 20, 2020.

50.     Following the cancellation of the trip, Plaintiff Sharma submitted a claim to Defendants for Trip Cancellation Coverage under the terms of the Insurance Policy, claim number 20052655-01. Plaintiff Sharma notified Defendants that he was seeking the maximum insurance coverage limit provided by the Insurance Policy for Trip Cancellation totaling $1,405.56.

51.     On July 24, 2020, Plaintiff Sharma received a letter from Defendants denying coverage for the claim in its entirety. A copy of the denial letter is attached hereto as Exhibit E.

## CLASS ACTION ALLEGATIONS

52.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23, on behalf of themselves

and the following Class, defined as follows:

**Nationwide Class**
All persons who purchased from Defendants or any affiliate or subsidiary entity a travel insurance policy and subsequently cancelled their trip due to Travel Prohibition Orders issued by federal, state and local authorities which ordered all citizens to stay at home and avoid non-essential travel as a result of the Coronavirus but have not received coverage from Defendants for losses incurred.

53.     In the alternative to the Nationwide Class, and pursuant to Federal Rule of Civil

Procedure, Rule 23(c)(5), Plaintiffs seeks to represent the following state classes only in the event

that the Court declines to certify the Nationwide Class above. Specifically, Plaintiffs seek to

represent the state classes defined as follows:

**California Class**
All persons in California who purchased from Defendants or any affiliate or subsidiary entity a travel insurance policy and subsequently cancelled their trip due to Travel Prohibition Orders issued by federal, state and local authorities which ordered all citizens to stay at home and avoid non-essential travel as a result of the Coronavirus but have not received coverage from Defendants for losses incurred.

**Georgia Class**
All persons in Georgia who purchased from Defendants or any affiliate or subsidiary entity a travel insurance policy and subsequently cancelled their trip due to Travel Prohibition Orders issued by federal, state and local authorities which ordered all citizens to stay at home and avoid non-essential travel as a result of the Coronavirus but have not received coverage from Defendants for losses incurred.

**Illinois Class**
All persons in Illinois who purchased from Defendants or any affiliate or subsidiary entity a travel insurance policy and subsequently cancelled their trip due to Travel Prohibition Orders issued by federal, state and local authorities which ordered all citizens to stay at home and avoid non-essential travel as a result of the Coronavirus but have not received coverage from Defendants for losses incurred.

**Oregon Class**
All persons in Oregon who purchased from Defendants or any affiliate or subsidiary entity a travel insurance policy and subsequently cancelled their trip due to Travel Prohibition Orders issued by federal, state and local authorities which ordered all

citizens to stay at home and avoid non-essential travel as a result of the Coronavirus but have not received coverage from Defendants for losses incurred.

**Utah Class**
All persons in Utah who purchased from Defendants or any affiliate or subsidiary entity a travel insurance policy and subsequently cancelled their trip due to Travel Prohibition Orders issued by federal, state and local authorities which ordered all citizens to stay at home and avoid non-essential travel as a result of the Coronavirus but have not received coverage from Defendants for losses incurred.

54.     Specifically excluded from the Class are the Defendants and their employees, as well as this Court and all of its employees.

55.     Numerosity: The members of the Class are so numerous that their individual joinder is impracticable. Plaintiffs are informed and believe, and on that basis allege, that the Class contain thousands of members. The precise number of members of the Class is unknown to Plaintiffs. The true number of members of the Class is known by Defendants, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice. Upon information and belief, members of the Class can be identified by the business records of Defendants.

56.     Commonality and predominance: Pursuant to Federal Rules of Civil Procedure, Rule 23(a)(3) and Rule 23(b)(3), commonality and predominance are satisfied because there are questions of law and fact common to Plaintiffs and the Class, which predominate over any individual questions affecting only individual members. The common questions of law and fact include, but are not limited to:

a.     Whether Defendants' conduct described herein constitutes breach of contract;

b.     Whether Defendants' conduct described herein constitute tortious breach of the covenant of good faith and fair dealing;

c.     Whether Defendants have been unjustly enriched as a result of their unlawful activities described herein;

    d.      Whether, prior to the publication of the CDC's "30 Days to Slow the Spread" campaign, it was foreseeable that stay-at-home orders would be issued;

    e.      Whether the stay-at-home orders fall within the meaning of "quarantine" under the insurance policy;

    f.      Whether the stay-at-home orders interrupted road service such that policyholders were prohibited from reaching their destinations;

    g.      Whether the stay-at-home orders made the accommodations policyholders booked inaccessible;

    h.      Whether COVID-19 is considered a natural disaster under the policy;

    i.      Whether Defendants should provide restitution to Plaintiffs and the Class;

    j.      Whether an injunction should issue prohibiting Defendants and their successors, agents, representatives, employees, and all persons who act in concert with any of them, from making untrue or misleading statements as described herein;

    k.      The amount and type of damages and other relief to be awarded to Plaintiffs and the Class; and

    l.      Whether Plaintiffs and the Class are entitled to restitution, statutory and other damages, civil penalties, punitive damages, and/or declaratory or injunctive relief.

57.    Typicality: Plaintiffs' claims are typical of the claims of the members of the Class. The factual and legal bases of Defendants' liability to Plaintiffs and other members of the Class are the same and resulted in similar injuries.

58.    Adequate Representation:  Plaintiffs will represent and protect the interests of the Class both fairly and adequately. They have retained counsel competent and experienced in complex class action litigation. Plaintiffs have no interests that are antagonistic to those of the Class, and their interests do not conflict with the interests of the members of the Class they seek to represent.

59.     Superiority: Class proceedings on these facts and this law are superior to all other available methods for the fair and efficient adjudication of this controversy, given that individual litigation would increase the delay and expense to all parties due to the complex factual and legal controversies present in this case. The class action device will present far fewer management difficulties, and it will provide the benefit of a single adjudication, economies of scale, and comprehensive supervision by this Court.

60.     Plaintiffs are entitled to an award of attorney's fees and costs in prosecuting this action against Defendants because: (a) a successful outcome in this action will result in the enforcement of important rights affecting the public interest; (b) This action will result in the cessation of business practices which are unlawful, unfair, or fraudulent business acts or practices, and will result in restitution and/or disgorgement of monies which Defendants should not equitably retain, thereby providing significant benefit to the Class and the general public; and/or (c) Such fees should not, in the interest of justice, be paid out of any recovery.

**INJURY**

61.     By reason of the above-described conduct and bad faith, Defendants caused actual harm, injury-in-fact, and loss of money to Plaintiffs and all other members of the Class.  Plaintiffs were injured in the following ways:

> a.     Plaintiff Robbins paid Defendants $472.43 for the Insurance Policy to insure against, among other things, Trip Cancellation, Trip Interruption and Travel Delays for a trip that Plaintiff intended to take to Deer Valley, Utah, between April 4, 2020 and April 12, 2020;

> b.     Plaintiff Clonts paid Defendants $65.00 for the Insurance Policy to insure against, among other things, Trip Cancellation, Trip Interruption, and

Travel Delays for a trip that Plaintiff intended to take to Florida between May 8, 2020 to May 13, 2020;

c.    Plaintiff Bachara paid Defendants $851.91 for the Insurance Policy to insure against, among other things, Trip Cancellation, Trip Interruption and Travel Delays for a trip that Plaintiff intended to take to Anna Maria Island, Florida between March 28, 2020 and April 4, 2020;

d.    Plaintiff Garner paid Defendants $50.73 for the Insurance Policy to insure against, among other things, Trip Cancellation, Trip Interruption, and Travel Delays for a trip that Plaintiff intended to take to Florida between April 24, 2020 and April 27, 2020;

e.    Plaintiff Sharma paid Defendant $91.36 for the Insurance Policy to insurance against, among other things, Trip Cancellation, Trip Interruption, and Travel Delays for a trip that Plaintiff intended to take to Hawaii between May 13, 2020 and May 20, 2020.

f.    All other members of the Class also paid significant sums to Defendants for Travel Protection Insurance;

g.    As a result of the Travel Prohibition Orders which ordered all citizens to stay at home and avoid non-essential travel due to the Coronavirus, Plaintiffs and all other members of the Class did not travel resulting in losses and damages; and

h.    Plaintiffs and all members of the Class have each been deprived of money and other benefits afforded by the terms of the travel insurance policies

issued by Defendants, including the use of their money and interest, requiring compensation and restitution.

## COUNT I
### Breach of Contract

62.     Plaintiffs reassert the allegations in the paragraphs above as though fully set forth at length herein.

63.     At all relevant times, Plaintiffs had in full force and effect their Insurance Policy. The Insurance Policy insures against, among other things, trip cancellation, trip interruption and travel delays for trips that Plaintiffs intended to take.

64.     The Insurance Policy was sold, issued and underwritten by Defendants and is applicable for any covered loss for travel due to covered event, such as a quarantine and travel prohibitions in the wake of natural disasters, prompted by the Coronavirus. Plaintiffs are the named insured on the Insurance Policy and are entitled to its benefit.

65.     Each member of the Class also procured travel insurance policies sold, issued and underwritten by Defendants insuring against, among other things, trip cancellation, trip interruption and travel delays for trips and is applicable for any covered loss for travel during the stated period. Each member of the Class is a named insured on such travel insurance policy and is entitled to its benefits.

66.     Defendants, and each of them, breached the terms of the Insurance Policy and similar travel insurance policies purchased by each member of the Class by failing and refusing to perform their contractual duties to pay all losses as set forth above.

67.     Plaintiffs and each member of the Class have performed all conditions, covenants and promises required to be performed pursuant to the terms of the Insurance Policy and similar travel insurance policies purchased by each member of the Class which were sold, issued and

underwritten by Defendants, including the payment of all premiums due, except as excused or prevented by Defendants' conduct.

68.    Plaintiffs and each member of the Class were subject to the Travel Prohibition Orders and thus required to quarantine and restrict their travel—making roads and destinations inaccessible for non-essential purposes—during the time they were scheduled to travel as covered by the Insurance Policy and similar travel insurance policies purchased by each member of the Class.

69.    Defendants improperly denied coverage and failed to provide the benefits required under the Insurance policy and similar travel insurance policies purchased by each member of the Class.

70.    As a direct result of Defendants' conduct as alleged above, Plaintiffs and each member of the Class have been deprived of the benefits of the insurance coverage for which they paid substantial premiums. As a direct, proximate and reasonably foreseeable result of Defendants' breaches of contract, Plaintiffs and the Class have been damaged in an amount in excess of $5,000,000, to be determined according to proof at the time of trial.

## <u>COUNT II</u>
### Tortious Breach of the Covenant of Good Faith and Fair Dealing

71.    Plaintiffs reassert the allegations in the paragraphs above as though fully set forth at length herein.

72.    Implied in every contract of insurance is a covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. An insurer is said to act in "bad faith" when it breaches its duty to deal fairly and in good faith with its insured.

73.     In breach of the covenant of good faith and fair dealing, Defendants acted in an unreasonable or imprudent manner in discharging their obligations under the Insurance Policy and similar travel insurance policies purchased by each member of the Class which were sold, issued and underwritten by Defendants, by, among other things, (1) failing and refusing to timely, fully and adequately investigate the claim of Plaintiffs and each member of the Class for coverage, (2) failing and refusing to timely, fully and adequately inquire into possible bases that might support the claim for coverage by Plaintiffs and each member of the Class, and (3) failing and refusing to pay all amounts due in according with the terms of the Insurance Policy and similar travel insurance policies purchased by each member of the Class. Specifically, Defendants claimed that after January 29, 2020, quarantine and the travel prohibitions cited above were reasonably foreseeable, despite the CDC recommending against travel for the first time on March 16, 2020.

74.     As a direct result of Defendants' conduct as alleged above, Plaintiffs and each member of the Class have been damaged in an amount in excess of $5,000,000, to be determined according to proof at the time of trial.

75.     In committing the acts described herein, Defendants acted in conscious disregard of the rights of Plaintiffs and each member of the Class and is guilty of malice, oppression and/or fraud. The conduct of Defendants warrants an assessment of punitive damages in an amount appropriate to punish Defendants, and each of them, and deter them from engaging in similar conduct in the future.

## COUNT III
### Declaratory Relief

76.     Plaintiffs reassert the allegations in the paragraphs above as though fully set forth at length herein.

77.     The Insurance Policies purchased by Plaintiffs and similar travel insurance policies purchased by each member of the Class are contracts under which Plaintiffs and each member of the Class paid premiums in exchange for Defendants' promise to indemnify Plaintiffs and each Member of the Class in the event of a covered loss. Plaintiffs and each Member of the Class have complied with all applicable provisions of the Insurance Policy and similar travel insurance policies purchased by each member of the Class, yet Defendants refuse to fulfill their contractual obligation to indemnify Plaintiffs and each member of the Class for losses sustained as a result of the cancellation of their trips due to the Travel Prohibition Orders.

78.     A case or controversy exists between Plaintiffs and each member of the Class, on the one hand, and Defendants, on the other hand, with respect to the right of Plaintiffs and each member of the Class to recover losses for the cancellation of their trips and Defendants' duty to indemnify pursuant thereto. Plaintiffs and each member of the Class paid all premiums due for the Insurance Policy and similar travel insurance policies purchased by each member of the Class. Plaintiffs and each member of the Class did not travel on the specified dates due to Travel Prohibition Orders which required Plaintiffs and each member of the Class to quarantine and restrict their travel—making roads and destinations inaccessible for non-essential purposes—during the time Plaintiffs and each member of the Class were scheduled to travel. Defendants denied the claims of Plaintiffs and each Member of the Class for such losses.

79.     A judicial determination is necessary and appropriate at this time under the circumstances in order that Plaintiffs and each member of the Class, on the one hand, and Defendants, on the other hand, may ascertain their respective rights and duties with respect to the losses and damages at issue.

**PRAYER FOR RELIEF**

**THEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

A.    An Order certifying this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (c)(4);

B.    For compensatory damages in an amount to be proven at trial;

C.    For statutory, treble and/or punitive damages to the extent permitted by law;

D.    For an injunction prohibiting Defendants and their successors, agents, representatives, employees, and all persons who act in concert with any of them, from making untrue or misleading statements as described herein;

E.    An order requiring Defendants to pay reasonable attorneys' fees, costs and disbursements, finding:

1.    A successful outcome in this action will result in the enforcement of important rights affecting the public interest;

2.    This action will result in the cessation of business practices which are unfair, and will result in restitution, disgorgement, or both, of monies which Defendants should not equitably retain, thereby providing significant benefit to the Class and the general public;

3.    Private enforcement of this action eliminates the necessity of costly public enforcement during an economic climate in which public resources are strained; and

4.    If at all possible, such fees should not, in the interest of justice, be paid out of any recovery;

F.      For such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

**IMBESI LAW GROUP P.C.**

Date: August 19, 2020

*/s/ Brittany Weiner, Esq.*
Brittany Weiner, Esq.
1501 Broadway, Suite 1915
New York, New York 10036
Telephone: (646) 767-2271
Facsimile: (212) 658-9177
brittany@lawicm.com

J. Gordon Rudd, Jr.
David M. Cialkowski
Christopher P. Ridout
Alia M. Abdi
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
Facsimile: (612) 341-0844
gordon.rudd@zimmreed.com
david.cialkowski@zimmreed.com
christopher.ridout@zimmreed.com
alia.abdi@zimmreed.com

Daniel L. Germain
**ROSMAN & GERMAIN LLP**
16311 Ventura Blvd., Suite 1200
Encino, CA 91436-2152
Telephone: (818) 788-0877
Facsimile: (818) 788-0885
*Germain@Lalawyer.com*

*Attorneys for Plaintiffs and the Proposed
Class*

24